The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States in this honorable court. Good morning. The first case for argument this morning is 19-2051, ABS Global v. Cytonome, LLC. Mr. Horwitz, whenever you're ready. Thank you, Your Honor, and may it please the Court. Cytonome's red brief raises a threshold jurisdictional question, so I'll start there. There's no dispute that this court had jurisdiction when ABS filed its appeal and also when ABS filed its blue brief. After all, Cytonome had sued ABS on the 161 patent in district court. And we know from Fort James that a determination of non-infringement, even when coupled with the patent owner's disclaimer of any right to appeal, doesn't deprive an Article III court of jurisdiction to resolve any remaining dispute over that asserted patent's validity. Now what Cytonome has attempted to do here is exactly what this court rejected in Fort James. Wait to see what happens on infringement. Mr. Horwitz, can I just interrupt you because time is short. I'm a little perplexed by portions of your argument. I understand the mootness versus the Article III standing issue. But you start off with Friends of the Earth, and you never take us through that analysis, which continues by the Supreme Court in Nike versus Already. You never take us to the point where there's a continuing controversy, there's no covenant not to sue, an analysis of who's got the burden to show what in the context of mootness. Instead, you just turn around and get us to what I think is a fairly unremarkable opinion of this court 15 years ago called Fort James. And that deals with the context of a district court proceeding and the retention of the ability to pursue a counterclaim even in the finding of non-infringement. That doesn't necessarily, without further analysis, apply to the context of an IPR. So you never go quite further where I think you would need to go to at least make an argument, to persuade me at least, on the mootness claim here. Thank you, Your Honor. Let me take those actually in reverse order. So on the Fort James point, we actually think that this case is a stronger case for jurisdiction than Fort James because as you mentioned, Fort James arises in the context of a DJ action for invalidity. And this court has made clear, for example, in the Consumer Watchdog case, that the Article III requirements for jurisdiction are actually relaxed when you have a procedural right to appeal an IPR. It wasn't sufficient in Consumer Watchdog, but this case would require even less of a showing of an injury than was at issue in Fort James. But going back to the mootness question, and the question of burden, Laidlaw and all those other cases make clear that the burden would be on the party seeking to deprive the court of jurisdiction to establish that something has changed. And in terms of this case versus those cases, this really is essentially a voluntary cessation case in the context of the mootness doctrine because ST certainly caused an initial injury by suing us, or Citanom, the child company here, by suing us. And Fort James says that's injury enough and you don't have to question it later. But even if you were to look at the mootness analysis, they caused that initial injury. And once they saw our blue brief on appeal and saw the arguments that we were making with respect to validity, they tried to stop. That really has little to do with what I think we need to analyze in this case, which is under Nike, under Friends of Earth, who's got the burden to do what? And I don't think you made any arguments in your gray brief about they haven't satisfied their burden because this is not a fulsome covenant not to sue. This is just solely a decision not to appeal an infringement case. I didn't see any of that analysis because at some point the burden might shift to you in a mootness appeal. And we've got no analysis of who's got the burden to show what or why this decision not to appeal was not satisfactory or not sufficiently compelling, as would be a broad covenant not to sue. So as I say, I think that the Friends of the Earth line of cases makes clear that burden shifts to them. As you note, the burden could have shifted back. Your Honor, a couple of times mentioned the insufficiency on the briefing. Largely, that's a function of when the issue was raised and what happened in the course of this appeal. And to the extent that the court requires additional briefing on this subject, obviously, we'd be happy to submit it. But when you refer to the covenant… The question is what happens in a case like this. I have a vague recollection that I've been involved in an appeal where Gray, having gotten a mootness claim in red, asked to submit additional material in the record, asked for additional time to file a more fulsome response. And that didn't happen in this case. I mean, why aren't we past that at this stage of the game? Well, as I say, Your Honor, I think that Fort James resolved the case on its own. And I also think that, as you mentioned, we actually didn't receive a covenant not to sue as in Fort James. We only had the thinnest of disclaimers of an appeal. And this is as against a party, and we point this out in our Gray brief, that has repeatedly sued us, including repeated times on the very same patent with respect to the same period. So we think that we've met our burden. But as I say, we'd be happy to submit more. I do want to mention… Mr. Horowitz? Mr. Horowitz, this is Judge Stahl. I just want to go back to that burden of proof point for a minute. So in Nike, the Supreme Court said, given Nike's demonstration that a covenant encompasses all the allegedly unlawful conduct, then the burden shifted to already to indicate that it has engaged in sufficiently concrete plans to engage in activities not covered by the covenant. Now, here, there is a disavowal of appeal. Do you have any information that shows that your client has concrete plans to engage in activities not covered by that disclaimer of appeal or disavowal of appeal? Well, Your Honor, there was a lot of disputes in the district court about what period of time was covered by the judgment with respect to the other patents. So it's not entirely clear, I suppose, whether Cytanome might be able to continue to sue on conduct. We shifted to a new design. And so it's possible that Cytanome would make an argument that it could sue us again.  You said you shifted to a new design. Was that new design considered in the district court case or not? It's the subject of yet another infringement suit that's been separately filed. Oh, okay. Yeah. So we're continuously facing, I think they've sued us twice this year alone, and they've sued us, I think, four or five times in the past on patent infringement. So this is a sort of never-ending string. You're saying, can I interrupt you just again to make sure I have clarity? So you're saying there's a lawsuit out there right now where you're accused of infringing based on a different product that is not the subject of the disavowal of the appeal of non-infringement. Not on this patent. We are the subject of a suit on other patents, and it is the same part of the machine, but it is not on this patent. I do want to note, just to be clear, that if the court were to disagree with us and determine that the appeal is moot, I just want to be clear that the proper disposition would not be to dismiss but to vacate the challenge portions of the decision below, and that's clear from this court's decision in the PPG Industries case cited in – Counsel, counsel, counsel, this is Judge Moore. First, you need to slow down. You really are going way too fast, and you're not giving judges a chance. But apart from that, you didn't ask for it. In PPG, they asked for it. It was relief expressly sought by the parties. You had an opportunity to ask to have the judgment below vacated, and you didn't. Well, Your Honor, two points. First, we did ask for vacater in our brief. The second is that – You asked for vacator on the merits. You didn't ask for it with regard to mootness. That's an entirely different motion. That's like saying I said no jurisdiction so I get every possible ground. Well, Your Honor, again, we think that there is jurisdiction, but as the court made clear in PPG, when the unilateral activity of the appellee is the reason that jurisdiction has disappeared, it is just an appropriate course, particularly in a case like this where there are going to be potentially arguments about estoppel down the line, not to deprive the appellant of any appeal and also hit the appellant with a possibility of estoppel, but to, as in PPG and as in the Munsingware Doctrine in the Supreme Court, to vacate the portions of the decision that would have been challenged, because we would have been deprived of the right to appeal. But as I say, I don't think that that's necessary here, because Fort James makes clear that the court has jurisdiction. Mr. Horwitz, this is Judge Stoll again. Now, let's say that hypothetically I don't think your Fort James argument is strong, and instead I want you to focus on whether there's activities and plans of your client that would make it so that disavowal didn't cover future products or current products with respect to this patent in suit. Do you have an argument along that line? We don't have it in the record. We do have it in the sense that, as I say, judgment was entered in the case that is the subject of the 161 patent in June. There was a transition process sort of worldwide involving the kinds of chips, the kinds of components that are accused here, and that process was not sort of immediate, and so there are arguments about the scope of damages under the other Citanome patents in the district court subject to the public record, and you can take judicial notice of them. So it is at least conceivable that Citanome would sue us on the 161 patent with respect to the aspects of the case that sort of post-date the judgment. We don't have a specific threat of that suit, but we are concerned, given the history between the parties, that ST and… Counsel, the Supreme Court's Nike case doesn't say, is it possible? The question they pose, and this is a direct quote, is could the allegedly wrongful behavior reasonably be expected to reoccur? They're not talking about possibilities in Nike. So the allegedly wrongful activity is the use of these chips. We're talking in a past tense at this point. It has recurred in the sense that we continue to use the chips after the date of the judgment in portions of the world, and ST and Citanome have sought to recover on that use. Again, the 161 patent, there was a finding of non-infringement. As to the patent? No, as to the family of patents. They could sue us, again, as to that activity. We think that we would have a very strong preclusion argument, but… Counsel, I think you misunderstand the Supreme Court quote. The quote is, that is the question the voluntary cessation doctrine poses. Could the allegedly wrongful behavior reasonably be expected to occur? You're saying the wrongful behavior is your use of the chips. No. The Supreme Court's identification of the wrongful behavior is in the cessation. It's the allegation of infringement. The wrongful behavior, could it be reasonably expected to occur? Is it reasonable to expect them to sue you again on the same patent, on the same chips you're making? That's what the Supreme Court quote is directed to. On the question of whether we think it's reasonable for them to expect them to sue again, I'll point the court to what we mentioned in the gray brief, which is that they have repeatedly sued us on the same patents. That is to say, multiple cases involving the same one patent. Not this patent, not the 161 patent. But the point is that they have a course of conduct that reveals they're suing us repeatedly on the same patent, covering the same period of time. So we do think it's reasonable to expect that to occur. Why didn't you make that argument in gray? Why didn't you come in and ask to supplement the record? It seems like now you're agreeing with our suggestion that that was the kind of thing that was necessary for you to at least bring forward. So why wasn't that done? Your Honor, respectfully, I think that our position is that the Fort James case made this case easy, and there wasn't actually a separate need. And the reason is that the Supreme Court has made clear, including in Cardinal Chemical, that there's a public policy in ensuring that patents that are asserted can be challenged on their validity. And we made the AIA-sanctioned decision to channel our validity challenge into the PTAB rather than in the district court. Counsel, why do you think you have standing in this case? I understand we're discussing moodness, but I want to know why you think you have standing. Standing, obviously, is assessed from the outset. And at the time we filed our notice of appeal, we were the defendant in a patent infringement action in which the 161 patent was asserted. I don't think that there's any case that's... No, at the time you filed this appeal, didn't we already have a summary judgment decision of no infringement from the district court? We had an opinion, but we didn't have judgment. And until final judgment is entered, the court could have revisited that decision, could have done any number of things. Okay, but didn't the court's non-revisiting of it mooch standing at that point in time? So this court has certainly never held that with respect to a DJ case or an IPR case, and the reason is that there's still a live dispute as to infringement until the case is truly final. But it became truly final, right, when they did an appeal? So the time of appeal hasn't passed, but I take your point about the disclaimer, and that is a moodness question, not a standing question. So as to standing, it's straightforward. We were the object of an infringement suit. As to moodness, the Supreme Court has made clear that the parties shouldn't be able to manipulate the jurisdiction of the federal courts and the judicial process in order to avoid challenges to their conduct or, in this case, to a patent. And the public policy interest in ensuring that patents that are asserted can be challenged is particularly strong, and it's reflected in the AIA. I know that I'm far into my rebuttal time, but I'll reserve whatever I can have. Okay. Well, we'll do that, but I have one for the question, too, in sort of bringing us back to where we started. You've made a few or you've suggested a few arguments here with regard to why Fort James and Cardinal Chemical, which I don't think you've incited in your brief, might compel a similar analytical framework in this context for IPRs. But that's not a given. That's a hard issue. I don't know where one would come out on that. But that is an issue that needed to be flushed out, did it not? You can't automatically say because Cardinal Chemical applies and counterclaims would continue to live in the Fort James circumstance automatically without further analysis that also applies to IPR proceedings. Don't you recognize that's a leap that would have to be analyzed? So, first, as to Cardinal Chemical, I was just mentioning it because it's the basis of the Fort James decision itself. So that's what Fort James is turning on. We think that, as I say, this is a stronger case than Fort James because of what the court has said about appellate jurisdiction from IPRs. But, again, this would have been fleshed out differently if it came earlier in the briefing process. So if Cytonohm had made the argument about Nike against already, which also isn't in the briefs, or otherwise, we could have responded and fully flushed them out. But because Cytonohm waited to see our blue brief before filing its disclaimer, it sort of disrupted the ordinary path of the appellate review process. Okay. Anything else from the panel members? Anything further? All right. We'll restore some rebuttal time, and let's hear from Mr. Shaw. Thank you. May it please the court, Pratik Shaw for Appellee Cytonohm, ST. I will start with the threshold question of Article III jurisdiction. The sole basis that supported ABS's standing to appeal has vanished. In light of the non-infringement ruling in the parallel district court proceeding, as to which Cytonohm has categorically disclaimed any appeal, I'm sure you've read Fred to Earth and Nike already, and other cases. Why is this not clearly under those cases, now at this stage of the game, become a mootness question, and not the threshold Article III question? Your Honor, I do agree with you that it does fall under the mootness rubric. But as the Supreme Court and this court has made clear, an entity has to show injury in fact throughout the course of the proceeding. The fact that whether or not they had injury in fact when they filed the appeal is not enough. They have to have it throughout the course, or the court loses Article III jurisdiction. I agree with you that then becomes a mootness question. But right now, there is no dispute. ABS has not contested, despite ample opportunity to, in its reply brief and here at argument, that there is no injury in fact right now, with respect to the 161 patent, the patented issue. Well, don't you have to make a showing, I'm sure you're familiar with the Nike case. Yes, Your Honor. Don't you have to make, I mean, Nike rested on the fact that there was this very, very broad covenant not to sue. Yes, Your Honor. And it analyzed that. I mean, so don't you have, whatever the burden is, and unfortunately that has not been flushed out in any of the briefing, but you have to show something. So your something here is we haven't appealed the finding of non-infringement. Right. That's your something, and you think that that's your burden, and now it moves to the other side to establish that they have some continuing recurring injury. Exactly, Your Honor. Exactly, the sole basis, and Mr. Horowitz just said that the sole basis of their standing at the time they filed appeal was the, at the time they invoked this court's jurisdiction, was our potential appeal of the non-infringement summary judgment in the parallel proceeding. Once we categorically disclaim that potential appeal of that non-infringement ruling, that eradicated the only injury in fact. So this is not a case like Nike where they had kind of a sprawling set of injury in facts, right, multiple trademark actions, multiple products at issue. Here, the only basis was this non-infringement summary judgment and the threat of an appeal. Once we took away the threat of that appeal, that is now, there is no injury in fact, and the burden then shifted to them. Once we made that argument in our red brief and attached the evidence, the argument then shifted, the burden then shifted back to them in their gray brief to come forward with some other basis of injury in fact. In your view, if they came up with affidavits that said, we've got a production plan and we're planning to come up with, you know, articles, new products that could arguably not, could be colorably different or not, would that be sufficient? Your Honor, I think it has to show a specific threat, and this court has laid it out in detail in the AVX case, which we discussed in our brief. And there, just to kind of reorient the court about that case, that was a case where the PTAB challenger brought, invoked this court's jurisdiction, and it attached even to its brief a detailed declaration from its general counsel saying, look, we've been in multiple patent battles with the other side. There have been four infringement suits. We think it's going to happen again because it happened. I'm sorry. Remind me about, is the AVX case, was that establishing standing in the first instance or was that a mootness question where standing had existed at one point in time? I honestly don't remember. Your Honor, it is a standing case, but it goes to the question you're asking about, what would they have to show to show some injury in fact? It was an injury in fact case, and it was at the time of filing, but I think the inquiry, once the burden shifts back to them, is the same. That is, can they show some injury in fact based upon the future likelihood of an infringement action? And AVX lays out the types of, the specificity required to show that. And even though the AVX appellant attached a declaration from their general counsel laying out in a sworn testimony all the sorts of things that Mr. Horowitz said at oral argument that, look, we have a long history with this company. They sue us all the time. We think it's going to happen again. This court was specific, and it said that sort of nonspecific, and the word Mr. Horowitz used was it's conceivable. And this court said the fact that it's conceivable, it might happen, that's not good enough. It has to be a specific, articulable, concrete basis to think that there's going to be another suit of infringement. They have not offered. If the Nike case makes the standard clear, could the allegedly wrongful behavior, and that wrongful behavior to be clear is definitely would you sue them again on the same patent. Right. Could the allegedly wrongful behavior reasonably be expected to reoccur? I mean, they've got a lot to prove there, right? Sure, exactly, Your Honor. They have to show some basis. Nike makes that clear. This court in AVX made that clear. This court in JTAC, all cases, JTAC and AVX, which we cite here, they have to have some concrete basis to make it clear. They have not presented that basis. Counsel, this is Judge Stahl. I think your approach, hypothetical though, was saying what if they came forward with a specific redesign and they thought that maybe you would sue them for infringement of that redesign. Of course, they haven't done that here, but would that be enough? If they had a claim chart or something like that and had a specific redesign. Sure, Your Honor. It's conceivable that if they came forward with the type of evidence that this court specified in AVX and that I think that you're hypothesizing that they said, look, we've redesigned the chip. Here's the claim chart. Here it potentially infringes on the claims of the patents under the arguments that have been made, and they put that in a sworn declaration and said we're coming out to market with this product, and they established that it was actually a concrete, specific, articulable risk of infringement, then yes. Then maybe it's a much closer case then. But they haven't done that here. In fact, they've done the opposite. Mr. Horowitz referred to it. It's not in the record, but the redesign. Well, they used that at trial. This was in September. They said the redesign avoids the 161 patent. That's why they did the redesign. So that's why there is no declaration attached to their gray brief that says there's an imminent threat. They told the district court that they've done a redesign that avoids the 161, and that, in fact, informed our decision not to seek appeal of the 161. Counsel, not only is there no declaration attached to their gray brief, none of the arguments he made are in their gray brief either, are they? They are not in the gray brief, Your Honor. So he is asserting all of this with no evidentiary support for the first time in oral argument. That is correct, Your Honor. And the one thing I will add is that, unlike Fort James, we do have a case of this court, albeit it is non-presidential, but it's much more recent and much more on point, and this court brought it up in the argument PPG v. Valspar. And that's one where, like here, that you had a PTAB challenger that lost in the PTAB. It sought appeal in this court. Standing was raised in the red brief. And then at oral argument, after oral argument, so much later than we did, the appellee attached a declaration, a covenant not to sue in that case because the alleged injury was not a potential appeal like here, but about the future risk of infringement. And this court said, look, even though that's tardy and unilateral, Article III is Article III, and we can't get around the lack of any injury in fact. And it dismissed the appeal as moot. Counsel, counsel, what is your view? I'm sorry. Go ahead. What is your view on vacature in U.S. Bank Court? That is something that happened in PPG as well. Yes, Your Honor. So, one, they haven't asked for that. They haven't asked for that relief. Two, the other point I would make is that is a discretionary equitable doctrine. And here the equities are more favorable for us than they were for the appellee in PPG v. Valspar. And the reason I say that is this. The non-infringement summary judgment happened 15 months ago. It happened before they invoked this court's Article III jurisdiction. So, everyone was on notice at the time they filed their notice of appeal that their sole basis of injury was already the subject of a non-infringement summary judgment determination of non-infringement by the district court. And so, in the normal case, the time for appeal, we would have had a final judgment over a year ago. Counsel, while I definitely, this is Judge Moore, I definitely agree with you that that is an excellent point. And I'm really glad you went right to it. What about the fact that you waited until after they filed their blue brief to disavow your right to appeal? Sure, Your Honor. A couple things. One is part of that is for that very reason. This was a fluid situation. It was entirely possible. And in fact, we expected that given this was 15 months ago, by the time that we would file our brief, there would actually be a final judgment in the district court. It turns out there are other pending claims in the district court. And even though those ended last September, the court has not yet ruled on the fully briefed JMAL motions. So, by the time, the fact, by the time we came to our red brief, it was clear that we weren't going to have a final judgment. And it was also clear that ABS had not alleged any future risk of infringement either at trial or in its red brief. And so that pushed us to the point of saying, okay, we no longer have a reason to seek this appeal. And so we represented that to the court, which should have ended this case right then. Counsel, if we were looking at this from an equitable factor consideration, because that's what the vacatur analysis requires of us, equitable. So you've got the non-infringement happened 15 months ago. They, in their camp, have, yes, but you then didn't give us what we really needed, i.e., a disavowal of appeal until after the blue brief was filed. But I would assume your response to that would be, well, that didn't stop them from continuing to pursue the appeal. So it's not like if you had given them at an earlier point in time a disavowal, they wouldn't have moved forward because they're arguing to us that that disavowal has no impact on their rights. That's exactly right, Your Honor. And this is not the sort of case like that they can claim surprise. Remember, in Valspar, that that covenant not to sue an appeal came after oral argument attached to a supplemental brief. We did it in our red brief, as is done often in standing Article three cases in this court. We've looked at we found 13 cases in which a PTAB Article three jurisdictional defect has arisen all since 2017. And then half of those it's raised in the red brief. And can I guess, could I just because time is short, can I take you back to the Nike case? Because I'm not quite clear that we're all on the same page. Nike starts out by saying under our precedents, it was Nike's burden to show that it could not reasonably be expected to resume its enforcement efforts. And then it looks to this broad covenant not to sue, which I think is I understand the case didn't just deal with the accused designs in that case, but covered all of the existing footwear designs and any colorable imitation. So it must be your view that your decision to disclaim your appeal in this case was right on par with the broad covenant not to sue in Nike. Is that your position that the two are the same and therefore you have the right to say you've satisfied your burden by simply disclaiming the appeal and now it's up to ABS to come up with further information? Is that what your position is? Because there is a difference, is there not, between disclaiming an appeal and the very broad covenant not to sue that the court in Nike says that was sufficient to satisfy Nike's burden. Yes, Your Honor, there is a difference, but analytically they're the same and here's the reason why. The disclaimer or covenant not to sue has to be coextensive with the asserted injury. In Nike, the asserted injury was much broader. The basis for the injury, in fact, they had a sprawling set of products Nike had sued on some and threatened to sue on a whole lot of others. And so in order to defeat that broad basis for an injury, in fact, you had to have a commensurately broad covenant not to sue. Otherwise, it wouldn't actually obviate the injury, in fact, and render the case moot. Here, the basis for the injury, in fact, that ABS assert is much narrower. Their only basis for injury, in fact, was the pending parallel district court infringement proceeding on which we already have a ruling of non-infringement. And so the sole basis for their injury, in fact, was the prospect of appeal. And so here, our categorical disclaimer of that appeal extinguished that threat of injury. So just as in Nike, we have issued a covenant or a disclaimer that is coextensive with the asserted injury, in fact, and that is the legal test that you would want to apply. Of course, it's going to differ case to case as to how broad that disclaimer has to be based upon the nature of the asserted injury, the products, and the actual litigants involved. Anything else from my colleagues? Okay. Thank you. Thank you, Your Honors. Mr. Horwitz will restore three minutes for rebuttal. Thank you, Your Honor. So first, I just want to point out something about Fort James on page 1348, which is that this court said that if, and this is about halfway down the page, a case or controversy adequate to support jurisdiction necessarily exists if the party has been actually charged with infringement. And it pairs that point, again, with something right above, which says a post-verdict covenant had no effect on the claim for infringement. So once you have a claim for infringement, you have injury, and the post-verdict covenant doesn't get rid of it. So that's why we think Fort James applies. Turning to the equities here and vacater, but it also bears on Chief Judge Prost and your questions at the end of my friend's argument. We don't have a covenant not to sue in this case. We have the thinnest of disavowals of appeal. In the PPG case, there was a covenant not to sue. In Fort James, there was a covenant not to sue. They had broad protections. We have a repeat asserter of the same patents. And this is in the gray brief. It's in the record. I went slightly beyond the record to respond to the court's questions, but this is in the record. We have a party who repeatedly sues us for infringement, including infringement of the same patents. They didn't give us a covenant not to sue. They gave us the thinnest of disclaimers of an appeal. Mr. Horowitz, this is Judge Stold. You have not yet explained why Fort James or Cardinal Chemical applies when they're separate proceedings. And it was not the court that altered the timing of when the two issues were decided, infringement and validity. And this is a different proceeding. This is an appeal from an agency, an agency that is not an Article III court. So can you address why it is that you think Fort James could apply in the context of separate proceedings of a district court in an IPR? Yes, Judge Stold. At the time we filed our appeal of this case, we invoked the Article III jurisdiction of this court. And at that time we were channeling our invalidity challenge, which the AIA encourages parties to do, through the PTAB and this court's appeal review of that PTAB process. And this court has said that the jurisdictional analysis for an appeal from a PTAB is actually more relaxed as compared to the district court context. But I want to return, if I can, with my remaining minute to the Vaquerter question. The equities here strongly favor Vaquerter, and the reason is because, as I say, we have no protection against a future suit from ST who has repeatedly sued us, including for the same patent, over and over. In light of the estoppel risk that's created by the AIA, and in light of the fact that we're dealing with a repeat player here, even if the court were to conclude that there is no jurisdiction because it's been rendered moot by Citanome's creative tactics, the court should nonetheless vacate to protect ABS against the risk of a future suit where ST comes in and argues that we've been estopped. Counsel, just for you to file away so that your client knows when and if you lose on mootness today, I'd have affirmed below on anticipation, so you wouldn't have won on that either. Well, I hope we have a couple more votes. Thank you, Your Honor. Thank you. We thank both sides, and the case is submitted.